OPINION OF THE COURT
Lizbeth González, J.
The underlying Housing Part (HP) proceeding was first heard on January 10, 2002. The subject premises is located at 1221 Sheridan Avenue, apartment 7, in Bronx County. The petitioner tenant complains that rats run on her children’s bunk bed and through her living room. She seeks emergency relief. The respondent owner challenged the court’s authority to order emergency rodent extermination since the inspection report is not *544 yet available. The court conducted a hearing on January 10th and makes the following findings of fact and conclusions of law.
Discussion
The Administrative Code of the City of New York provides that a tenant, group of tenants, or the New York City Department of Housing Preservation and Development (DHPD) itself may bring an HP action against an owner to correct violations of any law relating to housing standards. (Administrative Code § 27-2115 [h].) The New York City Housing Maintenance Code and the New York City Civil Court Act provide the statutory framework for commencing and maintaining an HP proceeding. (Administrative Code § 27-2115 [h], [i]; CCA 110 [a].)
The Housing Maintenance Code was enacted by the New York City Council to ensure that “minimum standards of health and safety, fire protection, light and ventilation, cleanliness, repair and maintenance, and occupancy in dwellings” are upheld to protect city residents against the “consequences of urban blight.” (Administrative Code § 27-2002.)
The respondent owner cites Administrative Code § 27-2121 and Parkchester Alliance v Parkchester Apts. Co. (180 Misc 2d 548 [Civ Ct, Bronx County 1999]) for the proposition that the court lacks statutory authority to order repairs absent an inspection report placing violations on the premises. This reliance is misplaced. The New York City Civil Court Act vests the Housing Court with broad authority to “recommend or employ any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards, if it believes they will be more effective to accomplish compliance or to protect and promote the public interest.” (CCA 110 [c] [emphasis added].) This means that the existence of violations may be proved by DHPD or inspection reports; DHPD or other governmental computerized records; photographs; or through testimony. (Scherer and Brandveen, Residential Landlord-Tenant Law in New York § 19:64 [2000-2001 ed].)
The Administrative Code provides that the Housing Court, on the motion of any party or on its own motion, “may issue such preliminary, temporary or final orders requiring the owner of property or other responsible person to abate or correct violations of this code * * * or to take such other steps as the court may deem necessary to assure continuing compliance with the requirements of this code.” (Administrative Code § 27-2121.) This means that an order to correct may issue once a violation is placed by the City, or by the court after a hearing.
*545 Parkchester Alliance involved a vastly different set of circumstances from the facts presented in the underlying proceeding. In Parkchester Alliance, approximately 30 tenants from the huge Parkchester condominium complex sought, inter alia, a court order to correct prospective violations of the plumbing system. No outstanding violations existed, and the dollar value for replacement was estimated at $200 million. Although continual leaks, flooding, interruption of water service, damp walls, and disruption of electrical service had occurred in the past, and plumbing problems would likely recur, the court declined to award the tenants with preemptive relief on the ground that:
“While it is true that replacement of the entire plumbing system has been piecemeal, as a stopgap measure, when pipes burst at different times, in different locations, and no doubt will continue to do so, the court believes that it is constrained by statute to limit its relief to the correction of violations as they arise, as opposed to ordering the wholesale replacement of the entire plumbing system for each of the respective buildings where the petitioner tenants reside.” (Parkchester Alliance v Parkchester Apts. Co., 180 Misc 2d at 552 [emphasis added].)
The Administrative Code provides, in pertinent part, that an owner shall keep a premises free from rodents. (Administrative Code § 27-2018 [a].) Where a premises is subject to infestation by rodents, the owner is required to apply continuous eradication measures. (Administrative Code § 27-2018 [b].) At an emergency hearing held on January 10, 2002, the petitioner tenant testified that rats infest her apartment. The DHPD inspection of her apartment took place on January 9, 2002, and the report is not yet available.
Photographs introduced into evidence at the hearing show a rat on the lower half of a child’s bunk bed, a rat on the living room floor of the subject premises, and two rats lying together on the living room floor. The tenant, who lives at the subject premises with her four children, credibly testified that she has repeatedly asked the property manager and the superintendent to exterminate the rats. Patrice Santangelo, the respondent owner’s agent, admitted that she lacks personal knowledge of the condition since she has never spoken with the petitioner or visited the subject premises. No other testimony or documentation was proffered to refute the tenant’s claim.
*546 Conclusion
This court determines that the petitioner’s testimony and the photographs, taken within the course of the past two weeks, demonstrate a condition that is immediately hazardous to the tenant and her four children. The court accordingly places a “C” violation on the premises for rat infestation. Emergency extermination of the rodents shall take place within 24 hours.